| | | |
|---|---|---|
| **RAGGIO-2204 JESSE OWENS, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. 1:19-CV-00697** |
| | § | |
| **JOHN-MATTHEW BARRETT** | § | |
| **HATTAWAY, KATHLEEN ANN** | § | |
| **HATTAWAY, and UNIVERSITY** | § | |
| **FEDERAL CREDIT UNION,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

Before the Court are the parties' remaining financial considerations, for which the Court held an evidentiary hearing on January 7, 2026. Additionally before the Court are parties' briefing on the monetary issues. *See* Dkt. Nos. 109, 111, 113, and 114. The Court also has reviewed Plaintiff's Motion for Sanctions (Dkt. No. 105), Defendants' response (Dkt. No. 106), and Plaintiff's Reply (Dkt. No. 106).

The Court sets forth its findings on the remaining monetary issues below. The Court also holds that Plaintiff's Motion for Sanctions (Dkt. No. 105) should be **DENIED** and sets forth its analysis below.

## I.  BACKGROUND

This dispute centers on real property located at 2204 Jesse Owens Dr., Austin, Texas 78748 (the "Property"). *See* Dkt. No. 1, at ¶ 7.[1] Javier Gustavo Raggio ("J.G. Raggio") obtained the property by general warranty deed in 2003, then conveyed the property to the company (and

---

[1]The Court set forth an extensive factual background for this case in its order on Plaintiff's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment. Dkt. No. 91. The Court reincorporates that factual background section here and provides a condensed background section.

Plaintiff here) Raggio-2204 Jesse Owens, LLC ("Raggio") by assumption warranty deed in 2009. Dkt. Nos. 39-2; 39-3. A member of Raggio, Stacey Hammer, eventually sued several defendants in Travis County District Court for unrelated claims. *See* Dkt. No. 39-4. In that case, the trial court entered one "final judgment," then later entered another "final judgment" which awarded sanctions against Hammer. Dkt. No. 39-6. Hammer appealed.

While Hammer's appeal was pending, the trial court appointed a turnover receiver (the "Receiver") to ensure that Hammer did not interfere with the collection of the sanctions award. Dkt. No. 39-8. The trial court found that Hammer owned the Property at issue here and authorized the Receiver to coordinate with a real estate broker to sell the Property. *Id*. John-Matthew Barrett Hattaway and Kathleen Ann Hattaway (the "Hattaways") contracted with the Receiver to purchase the Property and took out a loan from University Federal Credit Union ("UFCU") secured by a deed of trust. Before the Property was actually sold, Raggio's manager filed two "notice[s] of lis pendens" in the Travis County public records stating that the order appointing the Receiver was voidable because it erroneously named Stacy Hammer as the Property's owner. Dkt. Nos. 74-9; 74-14.

The Third Court of Appeals eventually dismissed Hammer's appeal for want of jurisdiction, finding that the first "final order" was a final judgment and that the sanctions award was void because the trial court's plenary jurisdiction ended before it signed that judgment. Dkt. No. 39-18. The Third Court of Appeals granted Raggio's subsequent mandamus petition and directed the trial court to vacate the judgment awarding sanctions, the turnover order, and the order to distribute proceeds. On remand, the trial court vacated those orders and also vacated the order approving the sale of the Property to the Hattaways. The trial court ordered the clerk of the court to pay Raggio "all funds held in the registry of the Court in connection with the above-referenced

2

case." Dkt. No. 40-8. The trial court also ordered the Receiver to pay Raggio "all funds constituting proceeds of the sale of real property located at 2204 Jesse Owens Drive, which are in [the Receiver's] possession, custody or control." *Id.*

In 2019, Raggio and Hammer filed this action against the Hattaways and UFCU in federal court. Dkt. No. 1, at 1. Raggio brought claims for trespass to try title, suit to quiet title, and declaratory judgment, seeking to recover title to and possession of the Property. *Id.* at 12–17. Defendants brought counterclaims for trespass to try title and suit to quiet title, seeking a determination that the Hattaways hold title to the Property. Dkt. No. 14, at 26–31. The Court granted Raggio's Motion for Summary Judgment as to its claim for trespass to try title and awarded Raggio title to and possession of the Property. Dkt. No. 91.

After the Court's order on the cross-summary judgment motions was entered, the remaining monetary issues were (i) Plaintiff's claim for damages based on lost rents or the value of the Defendants' use and occupation of the Property, whichever is higher, and (ii) Defendants' affirmative defense of offset based on their amount paid for the purchase of the Property, plus payment of property taxes, as well as the amounts paid to maintain the home since purchasing it in 2016.

## II. DISCUSSION

### 1. Monetary Issues

Plaintiff argues that its claim for damages for lost rents or the value of Defendants' use and occupation of the premises is expressly authorized by Texas law and should be granted. Dkt. No. 109 at 2 (citing TEX. R. CIV. P. 805). Because the Court granted summary judgment that Plaintiff has superior title, Plaintiff maintains it is entitled to damages under Rule 805.

Plaintiff also argues that Defendants are not entitled to any allowance for improvements because Defendants failed to plead a claim for improvement in accordance with Sections 22.021-22.024 of the Texas Property Code. *Id.* (citing TEX. R. CIV. P. 806).

Defendants argues that they specifically pled offset as an affirmative defense in their Original Answer and are entitled to repayment of their payment to purchase the property as well as expenses paid to maintain the home since 2016. Dkt. No. 111 at 3-4. Defendants maintain that it would be inequitable for Plaintiff to obtain the home and also avoid paying Defendants back for all their expenses. Defendants argue that Plaintiffs maintain the sale was void *ab initio*—so they should be restored to their original position. *Id.* at 3. Defendants argue Plaintiff is essentially seeking "all the benefits of their declaration that the transaction was void *ab initio* (title to the Property), but none of the detriments (restitution of consideration paid)." *Id.*

While Plaintiff put on evidence of the value of their lost rents due to the Hattaways' ownership of the Property, the Hattaways correctly point out a major flaw in Plaintiff's argument. Plaintiff called Robert Ellis to the stand, who by virtue of his ownership and control of Dyo Donum Dei is indirectly the owner and directly a manager of Raggio. Dkt. No. 115, Transcript, 14:2-15. Mr. Ellis testified about the last tenant leasing the Property before it was sold to the Hattaways and was guided through the mathematics of how to calculate its rent per square foot. *See id.* 18:8-18. Mr. Ellis also testified about the use of 1836 Property Management, a company that helps with renting the property out. *Id.* 18:19-19:10. Mr. Ellis testified about the rent per square foot values for homes in the same neighborhood as the Property, based on analyses prepared by 1836 Property Management. *Id.* 19:16-21:9.

Based on the spreadsheet provided from 1836 Property Management, Plaintiff presented evidence that the average rental rate in 2024 for the Property or properties very similar to it would

4

be $1.66. *Id.* 22:20-23:1. Plaintiff guided the Court through a mathematical exercise dividing the difference between values of rent per square foot in 2016 and 2024 by the number of years passed. *Id.* 23:2-8. Plaintiff's math resulted in there being a 3 cent per square foot per year rental rate increase. *See id.* After multiplying applicable yearly rates with the Property's square footage, Plaintiff's ultimate figure of lost rents was $223,111.34. *Id.* 24:14-15. Plaintiff therefore asked the court to award Raggio damages for lost rents totaling $223,111.34. *Id.* 23:21-23. Plaintiff maintains that Raggio was deprived of the benefit of that entire sum of money because it was not in possession of the Property.

Defendants on cross-examination of Mr. Ellis brought to light flaws in Plaintiff's mathematical calculation—including its failure to account for an Austin rental "bubble" in 2022 and the data's lack of research past the year 2024. *Id.* 35:21-36:1; 37:1-11. The most notable flaw pointed out by Defendants was Plaintiff's complete failure to take into account any expenses that would have been incurred while actually renting the property out. *Id.* 39:1-15. Plaintiff's witness admitted that there were no expenses taken into account that Raggio would have incurred as a landlord of the property from 2016 to the present. Even the expense for 1836 Property Management—which is paid approximately 10% of rental income—was not factored out of Plaintiff's requested $223,111.34 figure. *Id.* 40:11-17.

Defendants argue that what Raggio seeks is a windfall—to have Property given back and simultaneously win a larger award than Raggio ever could have earned by renting the Property during the ten-year span. The Court agrees that Raggio's requested relief would result in an inequitable outcome. While Raggio is entitled to seek his lost rents under Texas Rule of Civil Procedure 805, Raggio is not entitled to the gross sum of calculated rental values without consideration for any realistic deductions. In other words, Raggio is entitled to actual rental

value—the rental which would have actually been received by Raggio. *See Scott v. Scott*, 347 S.W.2d 288 (Tex. App.—Waco 1961, writ ref'd n.r.e.) (explaining that actual rental value received is a proper measure of recovery and hearing argument that awarding gross receipts without considering salary, overhead, etc. cannot constitute actual rental value). Raggio did not present evidence from which this Court can determine the actual rental value which would have been received, because Raggio only presented a gross figure based on one year's valuation—divided over a span of years—which included sums that Raggio never could have been entitled to. Raggio presented a sum based on its property manager's estimation and did not even factor out the 10% likely owed to the property manager. While Raggio is entitled to a reasonable sum as rental value, Raggio has not presented evidence from which this Court can discern that value.

This evidentiary issue on the rental value feeds into the core of this case: this Court is being called upon to adjust the equities. In *Nilsen v. Bonugli*, the San Antonio Court of Appeals reviewed a trial court's award of the true land owners—the Nilsens (appellants)—a sum for rental value, offset by the value of improvements made by the Bonulgis (appellees). 220 S.W.2d 178, 180 (Tex. App.—San Antonio 1949, no writ). The *Nilson* court explained that there had been a situation in which appellees entered into possession of property "under the belief that they were acquiring the same as their own, but under a contract which was legally unenforceable." *Id.* The Nilson court was reviewing the trial court's award of offset for improvements, when the appellees had not strictly complied with statutory requirements for pleading such improvements. While the relevant statutes today are not the same as those before the *Nilson* court, this principle from Nilson remains:

> By reason of having occupied and used the property [the appellees] became liable to pay a reasonable sum as rental therefor. The case seems to present a situation wherein the trial court was called upon to adjust the equities between the parties, and in so doing he was not strictly bound by the statute, but *could proceed upon general*

> *equitable principles.* In the absence of a showing that an inequity
> resulted, the judgment of the trial court should not be disturbed.

*Id.* While Raggio argues this a purely statutory matter, the Court finds Defendants did plead the affirmative defense of offset and that equitable principles must guide the Court's decision. Raggio will not be awarded $223,111.34. To award Raggio that sum, which does not reflect actual rental value, would be inequitable to the Hattaways.

Conversely, the Hattaways will not be entitled to an award for their improvements made to the property. The Court agrees with Raggio that the Hattaways were required to comply with strict pleading requirements to seek the values of their improvements. See TEX. PROP. CODE § 22.021. Section 22.021 requires that a defendant making a claim for improvements must plead:

> (1) that the defendant and those under whom the defendant claims
> have had good faith adverse possession of the property in controversy
> for at least one year before the date the action began;
> (2) that they or the defendant made permanent and valuable
> improvements to the property while in possession;
> (3) the grounds for the claim;
> (4) the identity of the improvements; and
> (5) the value of each improvement.

*Id.* Defendants did not plead any of those requirements in their Original Answer and Counterclaims. *See* Dkt. No. 14, Def.'s Answer. The Hattaways presented evidence at the hearing about improvements made to the property. However, the required components were never pled and the Court agrees with Raggio that awarding offset for improvements would be improper. The Court will hold Raggio to the requirement that it plead and prove its damages sufficiently—so it will likewise hold the Hattaways to that standard with regard to the claim for improvements.

Separately, the Hattaways seek and did affirmatively plead for offset in the amount of $215,000 paid for the purchase of the Property, plus payment of property taxes, as well as the amounts paid to maintain the home since purchasing it in 2016. *Id.* ¶ 76. The Hattaways argue that

because the sale was set aside, all parties should be returned to status quo. Dkt. No. 111, Def.'s Resp. Br. at 4 (citing *Keda Dev. Corp. v. Stanglin*, 721 S.W.2d 897, 902 (Tex. App.— Dallas 1986, no writ)). At the evidentiary hearing, Defendants presented evidence to prove that the Hattaways paid $215,000 at closing for the Property. Dkt. No. 115, Transcript, 53:2-16. Then, Defendant presented evidence year-by-year of the property taxes paid by the Hattaways for the Property. The following list summarizes the amounts the Hattaways proved were paid as property taxes per year:

> 2016: $4,685.11
> 2017: $4,483.68
> 2018: $4,623.86
> 2019: $4,695.00
> 2020: $4,875.61
> 2021: $4,906.85
> 2022: $4,785.10
> 2023: $4,335.55
> 2024: $5,210.90

*Id.* 54:24-57:12. The total amount of property taxes paid by the Hattaways for the Property was $37,390.76.

Defendants also put on evidence of their Homeowners Association ("HOA") dues which they paid for the Property while living in the residence. *Id.* 59:2-12. The total amount paid for HOA dues was $4,078.49. *See* Defendant's Ex. D8. The Court finds that the Hattaways were required to pay the HOA dues as part of "maintaining the home" since purchasing it in 2016. Therefore, they fall under the amount the Hattaways sought as offset.

Defendants also put on evidence of the amounts paid to Five Stone Tax Advisers LLC in order to reduce their property taxes. Dkt. No. 115, Transcript, 59:14-61:6. The Court finds that while those were incurred in connection to their residence in the Property, they were not required for maintaining the Property. The Court will decline in this equitable measure to award those amounts to Defendant.

8

"The general rule in Texas is that when a sale is set aside, the purchaser is entitled to a return of the purchase money paid." *Keda*, 721 S.W.2d at 903. When a document is void *ab initio* it is as if it did not exist because it has no effect from the outset. *Commonwealth Land Title Ins. Co. v. Nelson*, 889 S.W.2d 312, 318 (Tex. App.—Houston [14th Dist.] 1994, writ denied). A prevailing party on a voided deed issue "cannot recover the property without returning the consideration received," as it would be "unconscionable" for the prevailing party to hold the land and the money too. *See Ramirez v. Garza*, 269 S.W. 1102, 1103 (Tex. App.—San Antonio 1925, no writ).

The Court finds that this is a situation in which it is called upon to balance equitable principles. Plaintiff seeks a return of the lost rental value it could have obtained since 2016, but did not put forth evidence of actual lost rents. Defendants seek to be returned to their position before the 2016 sale which is now void *ab initio*. Defendants therefore put forth evidence detailing their exact expenses for purchase price, property taxes, and HOA fees paid to maintain the home. Defendants also sought the amounts they expended for improvements—but did not satisfy statutory pleading requirements. Overall, the Court finds the most equitable result is to award Defendants their amounts paid to purchase the home, along with the property taxes and HOA fees paid to maintain the home since 2016—as those would all have never been paid but-for the void *ab initio* sale of the home. Repayment of those fees puts Defendants back into the position they would have been in had they not purchased the home. Equitably, the Court will require clear pleading and evidence to award values for lost rents and improvements from Plaintiff and Defendants, respectively. Without the pleading and evidence being put before the Court, those values will not be awarded.

Therefore, Plaintiff is entitled to no value for lost rents—as Plaintiff did not present a reasonable sum as rental value. Defendants are entitled to no award for improvements, as they did

not properly plead for them. Defendants are entitled to $256,469.25 to equitably put them back into their position before the 2016 sale which is now void *ab inito*.

### 2. Plaintiff's Motion for Sanctions

Plaintiff Raggio also moves for sanctions, arguing that Defendants and their counsel "repeatedly lied to the Court by stating that the state court order that authorized a receiver to sell the Property to the Hattaways was not vacated." Dkt. No. 105, Pl's Mot. for Sanctions. Raggio argues that Defendants and their counsel knew those statements were false, but made misrepresentations that led to delay and legal fees appealing to the U.S. Fifth Circuit. *Id.* Raggio points to the Court's previous dismissal of this case based on the Rooker-Feldman doctrine, when it concluded that Raggio filed this case as an improper collateral attack upon the order that authorized the sale of the Property to the Hattaways. *Id.* at 5.

The Order authorizing the sale to the Hattaways had been vacated by the Third Court of Appeals in Austin. *See id.* at 1-2 (citing *In re Raggio—2204 Jesse Owens, LLC*, No. 03-18-00213-CV (Tex. App.—Austin 2018 orig. proceeding) (attached as Exhibits 19-20 to Dkt. No. 78)). Raggio argues that by December 18, 2018, all receivership orders had been vacated—which included the order that authorized the Receiver to sell the Property to the Hattaways. *Id.* at 2. Plaintiff filed its Original Complaint on July 10, 2019, and point to Defendants' Answer wherein they denied that on December 18, 2018, the trial court vacated the order authorizing the sale of the Property to the Hattaways. *Id.* at 3.

Because this Court previously dismissed this action under the Rooker-Feldman doctrine, Raggio had to appeal to the Fifth Circuit. Raggio argues Defendants "finally admitted" that the order authorizing the sale of the Property was vacated in their Brief to the Fifth Circuit. *Id.* at 5. The Fifth Circuit held that the 2016 orders permitting the Property to be sold to the Hattaways

were void for lack of jurisdiction and the Rooker-Feldman doctrine did not apply to Raggio's

claims regarding "title to and possession of" the Property. *Id.* at 5-6 (citing *Raggio-2204 Jesse

Owens, LLC v. Hattaway*, No. 20-50693, at *2-3, 9-10 (5th Cir. Aug. 19, 2022)). Raggio argues

that because of Defendants' knowing and repeated false statements, Raggio incurred legal fees of

$35,002.50 working on the appeal. *Id.* at 6. Raggio argues Defendants and their counsel violated

Rule 11(b) parts (b)(1) and (b)(3).

Rule 11(b) states in relevant part:

> Representations to the Court. By presenting to the court a pleading,
> written motion, or other paper--whether by signing, filing,
> submitting, or later advocating it--an attorney or unrepresented party
> certifies that to the best of the person's knowledge, information, and
> belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to
> harass, cause unnecessary delay, or needlessly increase the cost of
> litigation; [and] . . .
> (3) the factual contentions have evidentiary support or, if
> specifically so identified, will likely have evidentiary support after
> a reasonable opportunity for further investigation or discovery . . . .

FED. R. CIV. P. 11(b). Raggio argues Defendants' "improper purpose" was to cause unnecessary

delay and increase the cost of this litigation. Dkt. No. 105, Pl's Mot. for Sanctions, at 7. Raggio

argues that Defendants accomplished that purpose by "by falsely telling the Court that the order

that authorized the Receiver to sell the Property to the Hattaways was not vacated." *Id.* Raggio

asks the Court to find that Defendants and their counsel violated Rule 11(b) and impose

appropriate sanctions jointly and severally, upon Defendants, Julie K. Lane, and the firm

Almanza, Blackburn, Dickie & Mitchell, LLP. *Id.* at 7-8. Further, Raggio asks the Court to hold

Julie K. Lane individually responsible for unreasonably and vexatiously multiplying these

proceedings for the amount of $35,002.50—the amount of fees required for appeal. Finally,

Raggio seeks its attorneys fees incurred in bringing the sanctions motion itself--$2,363.00.

Defendants responded, arguing that the Parties have "a fundamental disagreement" about the effect of declaring the sale of the property to the Hattaways by a court-appointed receiver void *ab initio* when the orders voiding the receivership were granted in a prior lawsuit in which the Hattaways were *not parties* and had *no participation*. Dkt. No. 106, Def.'s Resp. to Pl's Mot. for Sanctions, at 1-2 (emphasis added). Defendants argue that they view this as "a matter of fundamental due process and lack of jurisdiction over the Hattaways in another proceeding." *Id.* at 2. From the beginning of the lawsuit, the Hattaways asserted their status as bona fide purchasers for value without notice of Raggio's claims and without notice of the orders issued in a lawsuit to which the Hattaways were not parties. *Id.* Essentially, the Hattaways maintain that the state court's vacating of the receivership orders in the Morgan lawsuit[2] --where the court sanctioned Hammer $37,599.80 and appointed a Receiver to sell the Property—did not apply to the Hattaways because they were not parties to the Morgan lawsuit. Further, Defendants point out that the Fifth Circuit affirmed the Court's previous dismissal on the basis of the Rooker-Feldman doctrine as to Hammer, demonstrating that the court rightfully questioned the "inextricably intertwined nature" of the state court proceedings. *Id.* at 3.

Defendants explain their previous statements by explaining that they specifically disputed that the December 18, 2018, order had the ability to vacate the sale of the Property to the Hattaways. The Hattaways were never parties to that action—they never participated in the Morgan lawsuit. The Hattaways also provide their actual responses to Raggio's Original Complaint—rather than Raggio's truncated versions. *Id.* at 5. In full, the responses show that Defendants consistently took the position that they denied that the trial court vacated the order authorizing the sale of the Property **to the Hattaways.** *Id.* (emphasis in original). Defendants also

---

[2] *See Hammer v. Univ. Fed. Credit Union, Wayne Morgan a/k/a El Campo Real Estate, LP, et. al.*; Cause No. D-1-GN-15-000557

admitted that the trial court had vacated its judgment against Hammer and the order appointing the Receiver. *Id.* Defendants therefore distinguished in their admissions/denials which parties they believed were affected by the state court's order.

A district court has broad discretion in determining whether sanctions are warranted and, if so, what they should be. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 404 (1990). Deciding Rule 11 motions often involves fact-intensive, close calls. *Id.* The Court must examine whether the lawyer's certification complies with "an objective standard of reasonableness under the circumstances." *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1296 (5th Cir. 1994) (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992). "In assessing whether an attorney has met these obligations, [courts] apply the 'snapshot' rule, measuring the attorney's conduct as of the time of the signing." *F.D.I.C.*, 34 F.3d at 1296.

The Court finds that sanctions are not warranted in this case. The Court is persuaded by Defendants' response which explains the non-frivolous position of Defendants based on their lack of involvement with the Morgan case. Defendants were asserting a position that did not violate Rule 11. Further, their responses to Plaintiff's Original Complaint—set forth in full—demonstrate how they distinguished between the effect of the state court's judgment. The Hattaways maintained that, because they were bona fide purchasers and not a party to the Morgan suit, the order authorizing the sale of the Property to them was not vacated. While the Hattaways' position ultimately was rejected by the Court, it was not objectively unreasonable under the circumstances such that sanctions are warranted. Plaintiff's Motion for Sanctions (Dkt. No. 105) is therefore denied.

**3. Further Relief**

13

The Hattaways sought an additional form of relief: that they be declared first-time home buyers so they can apply for first-time buyer status under any applicable government programs. Dkt. No. 95, Def.'s Mot. for Evid. Hrg., at 3. Raggio did not contest that relief sought by the Hattaways. Because the 2016 sale was declared void *ab initio*, it is as if it did not exist because it had no effect from the outset. *See Nelson*, 889 S.W.2d at 318. The Hattaway's requested relief is therefore granted and the Court will order that the Hattaways be declared first-time home buyers on the basis of the Court's interlocutory ruling that their deed from the Receiver is void.

### III.    CONCLUSION

**IT IS THEREFORE ORDERED** that the Hattaways are entitled to **$256,469.25** for the reasons set forth above.

**IT IS FURTHER ORDERED** that the Hattaways are declared first-time home buyers on the basis of the Court's interlocutory ruling that their deed from the Receiver is void. The Hattaways may apply for first-time buyer status under any applicable government programs.

**IT IS FINALLY ORDERED** that Plaintiff Raggio's Motion for Sanctions (Dkt. No. 105) is **DENIED.**

**SO ORDERED.**

**SIGNED** on March 23, 2026.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

14